**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

VERA EMMA,

Plaintiff,

vs.

MICHAEL ASTRUE, Commissioner of Social Security,

Defendant.

CASE NO. 08cv832-WQH (WMc)

REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiff Vera Emma (hereinafter Plaintiff) brings this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 1383 (c)(3)[1] to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Social Security Disability Insurance Benefits ("SSDI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C §§ 1381, et seq. Plaintiff has filed a motion for summary judgment. In that motion, Plaintiff argues that she should have been found "disabled" under the Act and the Appeals Council's decision adopting the Administrative Law Judge's ("ALJ") decision of March 28, 2007, denying her benefits, should be reversed because the ALJ's decision is not supported by

[1] 42 U.S.C. § 1383(c)(3) provides:

The final determination of the Commissioner of Social Security after a hearing [to determine eligibility or amount of benefits] shall be subject to judicial review as provided in section 405(g) of this title...

substantial evidence and is based on legal error. The Commissioner has filed a cross-motion for summary judgment. In the motion, the Commissioner argues the ALJ's decision is supported by substantial evidence and is not based on legal error.

**PROCEDURAL HISTORY**

On April 21, 2005, Plaintiff filed an application for Social Security Disability Insurance Benefits ("SSDI") claiming disability. Administrative Record ("A.R.") at 14. On June 3, 2005, Plaintiff's application was denied. (A.R. at 14.) Her request for SSDI was also denied on reconsideration on April 14, 2006. (*Id.*) Plaintiff requested an administrative hearing, which took place on February 20, 2007. (*Id.*) Administrative Law Judge ("ALJ") Bernard Trembly denied her request for benefits in an order issued on March 28, 2007. (A.R. at 26.) On March 28, 2008, the Appeals Counsel denied her request for review. Hence, the ALJ's decision became the final decision of the Commissioner. Thereafter, plaintiff filed the instant action in Federal Court on June 28, 2009. On September 2, 2009, Defendant filed a Cross Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment.

**FACTUAL BACKGROUND**

Plaintiff was born March 3, 1971 and is currently thirty-eight years old. At the alleged onset of her disability on June 15, 2005, Plaintiff was thirty-three years old. (A.R. at 25.) Plaintiff has an eleventh grade education, is able to read and communicate in English. (Id.) Plaintiff has no transferable job skills due to a lack of past relevant work experience. (Id.)

At the February 27, 2007, hearing Plaintiff testified she cannot work due to bipolar disorder, manifested as major depression, slow learning, sleep problems, back pain from several motor vehicle accidents. (A.R.at 17.) Plaintiff also testified her 13 year old son lives with her and her parents help to care for him. (Id.) Plaintiff states she receives Aid to Families with Dependent Children which supports her and her child. (Id.)

**LEGAL STANDARD**

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of

a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner makes this assessment by a five-step analysis. First, the claimant must currently not be working. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are required by statute. 42 U.S.C. § 1382(a)(3)(B).

In addition, when evaluating the severity of a claimant's alleged mental impairments, the Commissioner uses a "special technique" at each level of the review process. 20 C.F.R. § 416.1520a. In order to be considered disabled under the Act, the claimant must have: (1) a medically determinable mental impairment(s), 20 C.F.R. § 416.1520a(b)(1)[2], and (2) exhibit specified functional limitations as a result of that impairment(s) that prohibit the claimant from engaging in any gainful activity. 20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental impairment but does not exhibit the requisite functional limitations, the claimant may nevertheless still be considered disabled if the claimant exhibits clusters of symptoms or a syndrome that indicate the inability to engage in gainful activity. 20 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s) must either pose

---

[2] There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00.A.

functional limitations or cause symptoms or a syndrome to support a finding of disabled).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433(9th Cir. 1988) (*quoting Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576, (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (*quoting Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing courts finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

**DISCUSSION**

**Medical Evidence Presented**

To understand Plaintiff's alleged medical problems a chronological review of her relevant medical history is presented here.

-August 2002: Plaintiff was seen by Outpatient Psychiatric Services. An initial assessment was done and Plaintiff was diagnosed Bipolar I (Axis I). At that time, Plaintiff's GAF[3] was 55. Her speech was found to be rapid and loud. She had poor eye contact and appeared very agitated. Plaintiff was prescribed medication. Plaintiff admitted to using crystal methamphetamine to the physician and it was noted in her file. (A.R. at 403.)

-May 2003: Current GAF is 40. Plaintiff is reported at being well-groomed and cooperative. Plaintiff states she's been off methamphetamine for a few weeks. Plaintiff continues on her bi-polar medication. (A.R. at 227.)

-July 2003: Dr. O'Malley, M.D. (Board Certified Psychiatrist) reviews Plaintiff's medical history. Dr. O'Malley finds affective disorders and substance addiction disorders. Plaintiff is diagnosed as Bipolar I (stable with medication). A history of illegal drug use (methamphetamine dependence) is noted. Dr. O'Malley notes moderate restrictions in daily living and difficulties in maintaining social functioning. No repeated episodes of decompensation of extended duration were noted. In summary, Dr. O'Malley opines claimant is able to adapt to routine changes in the work place. (A.R. at 334.)

-August 2003: Dr. Sabourin, M.D. sees Plaintiff for an orthopaedic consultation. Plaintiff's chief complaint was low back pain; pain in the wrists, and pain in the neck. Dr. Sabourin notes Plaintiff sits and stands with normal posture. No evidence of tilt or list is found. Plaintiff's gait is normal, toe-heel walking is within normal limits. It is noted Plaintiff can sit comfortably and rise from a chair without difficulty. Plaintiff's cervical spine examinations shows no deformity, swelling, tenderness or spasm. Plaintiff did have decreased wrist dersiflexion with some slight tenderness. Dr. Sabourin found no restrictions from an orthopedic point of view.

---

[3] GAF stands for Global Assessment of Functioning. On a scale of 0-100 with higher scores indicating a greater level of functioning. *See Diagnostic and Statistical Manual of Mental Disorders.*

    -October 2003: Plaintiff's GAF is 50. Plaintiff is reported ast being sober, stable, and attending adult school programming for a GED and then technical school. (A.R. at 231.)

    -January 2004: Dr. Jamieson, M..D. examines Plaintiff. She is seeking to renew her medication. Her response to treatment is reported at good. Her behavior is appropriate, speech is normal, thought process normal, judgment fair. The report states it is unclear whether Plaintiff is meeting her goals regarding getting off methamphetamine.

    -January 27, 2004: Mr. Dreyer, MSW [4] sees Plaintiff. Plaintiff reports sobriety for two weeks. Her mood is depressed. (A.R. at 236.)

    -March 2004: Mr. Dreyer, MSW sees Plaintiff. Plaintiff is observed as being on drugs or intoxicated. Plaintiff admitted methamphetamine use. (A.R. at 244.)

    -April 2004: Mr. Dreyer, MSW sees Plaintiff. Plaintiff is cooperative and taking her prescribed medication. (A.R. at 246.)

    -June 2004: Dr. Takamura, M.D. sees Plaintiff. Plaintiff is agitated and yelling. Observation confirms drug use compared to prior exams and manic episodes.

    -October 2004: Dr. Carrol M.D. sees Plaintiff. Plaintiff is brought into the hospital by police. Plaintiff tried to jump off a balcony. Plaintiff is yelling, etc and admitted to methamphetamine use within the last 24 hrs.

    -November 2004: Dr. Tocha, M.D. sees Plaintiff. Plaintiff is entering into drug rehabilitation. Her eye contact is reported as good and she reports taking her prescribed medication. (A.R. at 256.)

    -January 2005: Dr. Brian Bromley, D.O., staff psychiatrist ad San Diego County Hospital. Psychiatric Assessment shows Plaintiff GAF at 66.

    -March 2005: Dr. Greenwood, M.D. sees Plaintiff. Plaintiff is reported groomed, pleasant and cooperative. Her medication is refilled. (A.R. at 258.)

    -April 2005: Dr. Greenwood, M.D. see Plaintiff. Plaintiff is reported as pleasant, cooperative with a good mood. "Reports she is actually looking to get into massage school."

---

[4] The acronym MSW stands for Master of Social Work.

(A.R. at 259.) Dr. Greenwood also reports that Plaintiff is capable of working 4-5 hours per day. Her work would be limited as Plaintiff cannot perform certain tasks. (A.R. at 261.)

-May 2005: Dr. Greenwood, M.S. see Plaintiff. Plaintiff self-reports she is feeling much more mood stable. Full range of mood affect. No changes to Plaintiff's medication. (A.R. at 260.)

-December 2005: Dr. Esposito M.D. sees Plaintiff. Plaintiff's mood is good. She is easily distracted. Doctor confirms bi-polar diagnosis. Dr. Esposito reports she believes Plaintiff would have a difficult time working. (A.R. at 270.)

-January 2006: Dr. Esposito, M.D. sees Plaintiff. Plaintiff's mood is noted as good. Her speech is good. Plaintiff is continued on her medication. (A.R. at 271.)

-February 2006: Dr. Becker, M.D. sees Plaintiff. Plaintiff is noted as doing well. Her mood is good and she is continued on her prescribed medication. (A.R. at 272.)

-March 2006: Dr. Becker, M.D. sees Plaintiff and notes she appears well groomed. Her medication regime is discussed. Plaintiff self-reports her family is supportive. (A.R. at 275.) On March 28, 2006 Plaintiff is seen by Dr. Esposito. Dr. Esposito states she has completed the SSI forms as requested by Plaintiff but "Plaintiff is to follow-up with on-going care by Dr. Becker." (A.R. at 276.)

-January 2007: Dr. Erwin, M.D. sees Plaintiff. Plaintiff's level of function is noted as low. Plaintiff's mood appears depressed. She self-reports as continuing to have auditory hallucinations. Her medication was modified. (A.R. at 374.)

**<u>ALJ's Medical Evidence Evaluation</u>**

After a lengthy discussion of the medical evidence presented and a presentation of Plaintiff's testimony, the ALJ determined Plaintiff was not entitled to disability insurance benefits under the Act. (A.R. at 26.)

Specifically, the ALJ found Plaintiff had not engaged in gainful activity since 1993, and the medical evidence established she suffered from the severe impairments of bipolar disorder and substance abuse addiction disorder (i.e. methamphetamine dependence in sustained remission). (A.R. at 17.) However, the ALJ concluded these impairments, or combinations thereof, failed to

meet or equal the criteria of any of the sections listed in the Social Security Regulations. (A.R. at 19.)

In reaching his decision, the ALJ considered a provider statement from Dr. Greenwald completed April 4, 2005, who reported "that the claimant does not have any limitations that affect her ability to work or participate in education or training." (A.R. at 20.)

The ALJ also considered, the assessment completed by the state agency medical consultants Dr. Rivera-Miya, M.D. and board certified psychiatrist Dr. Hurwitz, M.D. (A.R. at 20.) Dr. Rivera-Miya "diagnosed the claimant with affective disorder, not otherwise specified, and substance addiction disorder, in remission, that cause her no marked limitations and still permit her to sustain nonpublic simple repetitive tasks." (Id.) Dr. Hurwitz affirmed Dr. Rivera-Miya's findings. (Id.) The ALJ found sufficient evidence Plaintiff was addicted to methamphetamine.

The ALJ found no evidence in the record supporting Plaintiff's claim of physical weakness or disabling back pain. (Id.) Neither did the ALJ find any supporting evidence of difficulty with fine and gross manipulation or difficulty with repetitive motion of Plaintiff's hands or fingers. (Id.)

The ALJ found the opinions of treating physicians Dr. Greenwald and Dr. Esposito regarding Plaintiff's disability were not entitled to controlling weight for the following reasons:

> First, the opinions of Dr. Greenwald....are not well supported. Dr. Greenwald's opinion is devoid of a diagnosis and supporting medical findings.
> Second, Dr. Greenwald's opinion is on the claimant's physical condition but her specialty is psychiatry.
> Third, Dr. Greenwald's opinion is refuted by Dr. Sabourin's July 31, 2003, report, that the claimant has no physical restrictions as well as the failure of the claimant's other physicians to describe her to have significant physical limitations.
> Fourth, the opinions are contradicted by the repeated descriptions of the claimant's mood as euthymic, okay, or good: Dr. Bromley on January 28, 2005; Dr. Greenwald on March 22, 2005; April 4, 2005; and May 2, 2005: Dr. Esposito on December 5, 2005 and January 13, 2006; and Dr. Becker on February 21, 2006.
> Fifth, the opinions are inconsistent with Dr. Greenwald's April 4, 2005, report that the claimant does not have any limitations that affect her ability to work or participate in education or training.
> Sixth, the opinions are refuted by Dr. Greenwald's April 4, 2005 report that the claimant has no problems with social functioning and that the claimant's task completion ability is not affected by her mental condition.
> Seventh, the opinions are contrary to the conclusions of Dr. Rivera-Miya and Dr. Hurwitz that the claimant is able to sustain nonpublic simple and repetitive tasks.
> Eighth, the opinions are inconsistent with the weight of the record as a whole and are therefore entitled to reduced weight.
> Ninth, the determination that the claimant is not disabled is an issue reserved to the

Commissioner and even treating source opinions on such issues are never entitled to controlling weight or special significance. (A.R. at 21-22.) (internal citations omitted.)

Thereafter, the ALJ presented his "clear and convincing reasons, the allegations of the claimant's disabling limitations are not credible."[5]:

> Specifically "the analysis of the opinions of Dr. Greenwald , and Dr. Esposito is incorporated by reference herein ...the claimant's course of treatment had reflected a conservative approach. The record does not indicate that the claimant's medications are ineffective or that they cause her debilitating side effects. [T]he claimant complains of slow learning and poor concentration, but the evidence shows otherwise. Dr. Bromley described the claimant to have logical, clear and coherent thought on January 28, 2005. Dr. Esposito reported the claimant to have a linear thought process on January 13, 2006. Olga Becker, M.D., of UCSD Psychiatric Outpatient Clinic, reported the claimant to have linear thought processes on February 21, 2006; March 21, 2006. [T]he evidence rebuts the claims of the claimant's disabling depression. Dr. Bromely found the claimant to have an euthymic mood on January 28, 2005. Dr. Greenwald reported the claimant to have an okay mood on March 22, 2005; an euthymic mood on April 4, 2005; and an okay mood on May 2, 2005. Dr. Esposito described the claimant to have a good mood on December 5, 2005; January 13, 2006. Dr. Becker reported the claimant to have a good mood on February 21, 2006. Dr. Sabourin reported claimant to have no physical restrictions on July 31, 2003. The claimant denied to Dr. Carroll on October 9, 2004, that she has any chronic medical problems. [T]he claimant told inconsistent tales about her drug use. The claimant denied that she used drugs at UCSD Hospital on October 21, 2000 and November 9, 2001. The claimant admitted at UCSD Outpatient Psychiatric Clinic on August 2, 2002, that she had been using crystal methamphetamine every day for the past ten years. The claimant report at UCSD Outpatient Psychiatric Clinic that she had been sober for two weeks on January 27, 2004 and off crystal methamphetamine for a few weeks on May 20, 2003 and January 27, 2004. The claimant told Dr. Bromley on October 09, 2004, that she used crystal methamphetamine that day and the previous night. The claimant told Dr. Bromley on January 28, 2005, that she had last used methamphetamine four months earlier. On March 30, 2004, the claimant admitted at UCSD Outpatient Psychiatric Clinic that she had recently used methamphetamine . On the following day, sh admitted that she had used methamphetamine on the previous night. ON April 20, 2004, she reported that she had been sober for two days. Dr. Takamura noted on June 24, 2004, that the claimant 'definitely seems high on drugs.' The claimant told Dr. Erwin on October 24, 2006, that she had been sober for more than eighteen months. [T]he claimant was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties. (A.R. 22-24.)

In sum, reviewing the medical records and testimony presented, the ALJ found Plaintiff's impairments "alone or in combination, have not met or equaled the requirements of any listing of the Listing of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1, since her amended alleged disability onset date." (A.R. at 19.) Therefore, the ALJ rejected Plaintiff's allegations of disabling limitations and determined Plaintiff has the residual functional capacity with no

---

[5] Only those reasons related to Plaintiff's claim on appeal are cited herein.

exertional limitations and the ability to perform nonpublic simple and repetitive tasks. (A.R. at 19.)

**Plaintiff's Claim on Appeal**

The single contention raised by Plaintiff is: "The ALJ's rejection of the opinion of Dr. Esposito is based on legal error and not supported by substantial evidence." (Pl.'s P& A at 6). Specifically, Plaintiff argues "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." (Id.) Plaintiff cites the Ninth Circuit case of *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir 1995) for the proposition that the opinion of an examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record, even if contradicted by a non-examining doctor. *Id*. Plaintiff also contends "[b]y rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (Pl.'s P&A at 8 citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)).

The Defendant argues "[i]t was reasonable for the ALJ to discount Dr. Esponito's (sic) unsupported opinion based in part on these inconsistencies, especially considering that the ALJ provided numerous additional reasons also supported by substantial evidence." As noted by the Defendant, "the ALJ decided not to accept Dr. Esposito's opinion because it was inconsistent with the record as a whole." (D's Opp. at 5.) Moreover, Defendant points out that the notations of treating physicians Dr. Becker and Dr. Bromely indicated Plaintiff was functioning well with consistent medication. (Defs. MSJ at 5.)

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than to that of a nontreating physician. *Id.* (citing *Winans v. Bowen*, 853 F2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

The Ninth Circuit examined the weight to be given a treating source opinion in *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007) The Ninth Circuit held "[i]f a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specific factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Id.* at 631.

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reasons for doing so that are based upon substantial evidence in the record." *Jamerson v. Chater*, 112 F.3d. 1064, 1066 (9th Cir. 1997) (quoting *Andrew v. Shalala*, 53 F3d 1035, 1041 (9th Cir. 1995)). "The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes*, *supra*, 881 F.2d at 751)). Additionally, "[r]eports of consultative physicians called in by the Secretary may serve as substantial evidence." *Andrews*, *supra*, 53 F.3d at 1041. Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

As noted herein, the ALJ in this case initially set out his reasons why he did not fully credit Dr. Greenwald's and Dr. Esposito's opinions as treating physicians. In his analysis the ALJ cited to substantial evidence in the record to support his reasons not to give controlling weight to the opinion's of Drs. Greenwald and Esposito regarding Plaintiff's ability to sustain employment. In *Orn*, the ALJ's reasons for rejecting the treating physician's opinion were actually contradicted by the record in that case. *Id.* at 634. In contrast, the ALJ here specifically cited to inconsistencies

between the opinions of Dr. Greenwald and Dr. Esposito and other evidence presented in the record, including their own contradictory statements regarding Plaintiff's medical condition. (A.R. at 21.) An ALJ may discredit a physician's opinion when it lacks support in the physician's own treatment notes. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The ALJ next set out the evidence presented in the record he used to determine Plaintiff has not been under a disability. As presented herein, the ALJ relied on the opinions of virtually all of the physicians (treating and non-treating) to support his conclusion that Plaintiff was not disabled.

**T**he ALJ relied on both treating and non-treating, as well as examining and non-examining physicians in reaching his decision. Specifically, the record indicates that none of the non-treating or non-examining physician's opinions contradicted the treating physician's opinions with the exception of Dr. Esposito's and Dr. Greenwald's statements that Plaintiff is unable to function in the competitive job market. (A.R. 20 & 21.) Overall, the non-treating and non-examining physicians made findings the ALJ found consistent with the findings of Plaintiff's treating and examining physicians. Accordingly, the Court finds the ALJ's finding is supported by substantial evidence and free of legal error and recommends Plaintiff's motion for summary judgment be **DENIED**.

**CONCLUSION AND RECOMMENDATION**

After a thorough review of the record and the papers submitted and based on the reasons set forth above, this Court finds the ALJ's denial of benefits is supported by substantial evidence. Accordingly, it is recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **February 8, 2010**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 15, 2010**. The parties are advised that failure to file objections withing the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

**DATED: January 22, 2010**

**Hon. William McCurine, Jr.**
**U.S. Magistrate Judge**
**United States District Court**