# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA J. EMMA, | CASE NO. 08cv832-WQH-WMc |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is Plaintiff's Motion for Summary Judgment (Doc. # 13) and Defendant's Cross-Motion for Summary Judgment (Doc. # 16).

## I.    Background

### A.    Procedural History

On April 21, 2005, Plaintiff filed an application for Social Security Disability Insurance benefits ("SSDI"). (Doc. # 8 at 14). On June 3, 2005, Plaintiff's application was denied. (*Id*.) On April 14, 2006, Plaintiff's request for SSDI was denied on reconsideration. (*Id*.) Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"), which took place on February 20, 2007. (*Id.*)

At the February 20, 2007 hearing, Plaintiff testified that she cannot work due to bipolar disorder, manifested as major depression; slow learning; sleep problems; and back pain resulting from several motor vehicle accidents. (*Id*. at 17). Plaintiff, who was born on March 3, 1971, alleges a disability onset date of October 9, 2004. (*Id*. at 14, 25).

On March 28, 2007, the ALJ issued an opinion denying Plaintiff's request for benefits. (*Id.* at 26.) On March 28, 2008, the Appeals Counsel denied Plaintiff's request for review. (*Id.* at 4). Hence, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").

On May 7, 2008, Plaintiff initiated this action seeking judicial review of the Commissioner's decision to deny Plaintiff's claim for benefits. (Doc. # 1).

On June 28, 2009, Plaintiff filed a Motion for Summary Judgment. (Doc. # 13).

On September 2, 2009, Defendant filed a Cross-Motion for Summary Judgment. (Doc. # 16).

On January 22, 2010, the Magistrate Judge issued a Report and Recommendation. (Doc. # 20).[1] The Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment be denied and Defendant's Cross-Motion for Summary Judgment be granted.

On February 8, 2010, Plaintiff filed objections to the Report and Recommendation. (Doc. # 21).

**B.     Medical Evidence in the Administrative Record**

The following is a chronological overview of the medical evidence in the Administrative Record.

In August 2002, Plaintiff was seen by Outpatient Psychiatric Services at the University of California, San Diego ("UCSD"). (Doc. # 8 at 401-03). An initial assessment was done and Plaintiff was diagnosed with "Bipolar I" and amphetamine dependance. (*Id.* at 403). At that time, Plaintiff's GAF was 55.[2] Plaintiff admitted to using crystal methamphetamine "everyday" for the past 10 years. (*Id.* at 402). Plaintiff was prescribed medication.

On May 20, 2003, Plaintiff was again seen by UCSD Outpatient Psychiatric Services. (*Id.* at 227). Plaintiff's GAF was 40. Plaintiff was reported as being well-groomed and cooperative. Plaintiff stated that she had not used crystal methamphetamine for a "few weeks."

---

[1] The Court declines to adopt the Report and Recommendation.

[2] "GAF" stands for "Global Assessment of Functioning." GAF operates on a scale of 0-100, with higher scores indicating a greater level of functioning. *See* Diagnostic and Statistical Manual of Mental Disorders.

(*Id.*) Plaintiff was continued to be prescribed bipolar medication.

In July 2003, Dr. Ed O'Malley, M.D., a Board Certified Psychiatrist, reviewed Plaintiff's medical history in connection with an earlier application for SSDI benefits. (*Id.* at 334). Dr. O'Malley found affective disorders and substance addiction disorders. Dr. O'Malley opined that Plaintiff was able understand and perform simple repetitive tasks; Plaintiff had the ability to maintain the pace, persistence and concentration needed to perform unskilled work over a forty-hour week; Plaintiff was precluded from work requiring frequent public contact; Plaintiff was able to relate to coworkers and supervisors; and Plaintiff was able to adapt to routine changes in the work place.

In July 2003, Dr. Sabourin, M.D., a Board Certified Orthopaedic Surgeon, saw Plaintiff for an orthopaedic consultation. (*Id.* at 335-39). Plaintiff complained of "[p]ain in the low back, pain in the wrists, and pain in the neck" arising from "five separate car accidents." (*Id.* at 335). Dr. Sabourin opined that, "[b]ased on my examination of this patient today, from an orthopedic point of view, this patient has no restrictions." (*Id.* at 339).

In October 2003, Plaintiff was seen by Outpatient Psychiatric Services. (*Id.* at 231). Plaintiff's GAF was 50. Plaintiff was reported as being sober, stable, and attending adult school programming for a GED and then possibly technical school.

In January 2004, Plaintiff was seen by Dr. Anna Jamieson, M.D. at UCSD Outpatient Psychiatric Services. (*Id.* at 235). Plaintiff was seeking to renew her medication. Plaintiff's response to treatment was reported as good. Plaintiff's behavior was appropriate; her speech was normal; her thought process was normal; her judgment was fair. Dr. Jamieson reported that Plaintiff's progress toward her goals was "good," although Dr. Jamieson was "unclear about meth use." (*Id.*)

On January 27, 2004, Plaintiff was seen by Joseph Dreyer, Master of Social Work, at UCSD Outpatient Psychiatric Services. (*Id.* at 236). Plaintiff reported sobriety for two weeks. Plaintiff's mood was depressed.

In March 2004, Dreyer saw Plaintiff. (*Id.* at 244). Plaintiff's condition was described as "actively using meth" and "dysphoric mood." (*Id.*)

1    In April 2004, Dreyer saw Plaintiff. (*Id*. at 246). Plaintiff reported "two days sobriety"
2 and she was described as having a "stable" and "cooperative" mood. (*Id*.)

3    In June 2004, Plaintiff was seen by Dr. Takamura, M.D., at UCSD Outpatient
4 Psychiatric Services. (*Id*. at 247). Dr. Takamura reported that Plaintiff was agitated and
5 yelling and "definitely seems high on drugs." (*Id*.) Plaintiff was taken to the Emergency
6 Room, with "restraint needed" by security officers. (*Id*.)

7    On October 9, 2004, Dr. Matthew Carroll, M.D. saw Plaintiff at the San Diego County
8 Psychiatric Hospital, where she was taken by police after "she apparently jumped off a small
9 balcony." (*Id*. at 250). Plaintiff admitted to using crystal methamphetamine. Plaintiff's
10 actions were "of a violent nature," and "[i]t took three rather muscular police officers to take
11 her down and handcuff her." (*Id*. at 252). Plaintiff's diagnosis was amphetamine intoxication
12 and her GAF was 35.

13    On November 15 2004, Plaintiff was seen by Dr. Emily Tocha, M.D. at UCSD
14 Outpatient Psychiatric Services. (*Id*. at 256). Plaintiff was seeking refills of her medication.
15 Plaintiff was reported as behaving appropriately and having good eye contact. Plaintiff stated
16 that in "a few days," she was "going into a three month rehab program." (*Id*.)

17    In January 2005, Plaintiff was seen by Dr. Brian Bromley, D.O., staff psychiatrist at San
18 Diego County Hospital. (*Id*. at 237-40). Plaintiff reported that she left a rehabilitation
19 program because she "became defiant with house rules." (*Id*. at 237). Plaintiff reported that
20 her medication "helps her a lot because 'I'm less confrontational ... my moods are more stable
21 and I'm not as argumentative.'" (*Id*.) Dr. Bromley indicated that Plaintiff's GAF was 66. Dr.
22 Bromley reported that Plaintiff's mood was euthymic; her insight was excellent; she was alert;
23 and her thoughts were logical, clear and coherent.

24    On March 22, 2005, Plaintiff was seen by Dr. Vanessa Greenwood, M.D. at UCSD
25 Outpatient Psychiatric Services. (*Id*. at 258). Plaintiff's medication was refilled and she was
26 reported as being pleasant and cooperative.

27    On April 4, 2005, Plaintiff was seen by Dr. Greenwood. (*Id*. at 259). Plaintiff was
28 reported as being pleasant, cooperative with a good mood. Plaintiff was "actively looking to

1  get into massage school." (*Id.*) Dr. Greenwood reported that Plaintiff was capable of working
2  4-5 hours per day. (*Id.* at 261). Dr. Greenwood stated that Plaintiff has "no problems" with
3  "social functioning" or "task completion," but Plaintiff "does have anxiety in stressful
4  situations, [Plaintiff] may retreat and withdraw under strain." (*Id.* at 264).

5        On May 2, 2005, Dr. Greenwood saw Plaintiff. (*Id.* at 260). Plaintiff reported that she
6  was feeling "much more mood stable" and she had been sober for 5-6 months. (*Id.*)

7        On May 31, 2005, Dr. Gina Rivera-Miya, M.D., a state agency consultant, completed
8  a mental residual functional capacity assessment of Plaintiff. (*Id.* at 346-51). Dr. Rivera-Miya
9  reviewed the medical records and opined: "[O]verall, [Plaintiff] is able to do basic activities
10 with some limited social contact. Early [mental status examinations] were adverse due to
11 +drugs and non-compliance to treatment. Subsequent records show good response to meds and
12 improved [mental status examinations]. Condition seems stable as her medications' dosage
13 have remained the same. Overall evidence is consistent with [Plaintiff] being able to perform
14 non-public [simple and repetitive tasks]." (*Id.* at 351).

15       On December 5, 2005, Plaintiff was seen by Dr. Nicole Esposito M.D. at UCSD
16 Outpatient Psychiatric Services. (*Id.* at 270). Dr. Esposito stated that Plaintiff's mood was
17 "good" but she was "easily distracted." (*Id.*) Plaintiff reported "irritability" is a problem on
18 the days in which Plaintiff forgets to take her medication. (*Id.*) Dr. Esposito confirmed a
19 diagnosis of "bipolar". (*Id.*) Dr. Esposito stated: "[Plaintiff] is applying for SSI which I
20 support given her ongoing daily difficulties with irritability [and] distractability[;] I believe she
21 would have difficulty working." (*Id.*)

22       On January 13, 2006, Dr. Esposito saw Plaintiff. (*Id.* at 271). Dr. Esposito stated that
23 Plaintiff's mood was "good" and "stable." (*Id.*) Plaintiff reported ongoing difficulties with
24 increased appetite which Plaintiff attributed to one of her medications, Depakote. Dr. Esposito
25 discussed the risks of discontinuing the medication, but Plaintiff "believes [it] is worth the risk
26 to get the benefit of weight loss." (*Id.*) Dr. Esposito ordered Plaintiff to taper off the Depakote
27 and begin a new medication.

28       On February 21, 2006, Plaintiff was seen by Dr. Olga Becker, M.D. at UCSD

1 | Outpatient Psychiatric Services. (*Id.* at 272). Plaintiff's mood was described as "good." (*Id.*)
2 | Dr. Becker indicated that Plaintiff was "doing well for the last two months since [the drug]
3 | Abilify was started." (*Id.*) Dr. Becker stated that Plaintiff "wants to take only one medication
4 | in the future." (*Id.*)

5 | On March 21, 2006, Dr. Becker saw Plaintiff. (*Id.* at 275). Dr. Becker and Plaintiff
6 | discussed Plaintiff's medication regime, which included taking Abilify 10 mg daily. (*Id.* at
7 | 379).

8 | On March 28, 2006, Dr. Esposito completed a mental impairment questionnaire for
9 | Plaintiff. (Id. at 366-71). Dr. Esposito stated that Plaintiff had "schizoaffective disorder,
10 | bipolar type" and "meth dependence in sustained full remission." (*Id.* at 366). Dr. Esposito
11 | reported that Plaintiff's GAF was 55. Dr Esposito stated: "Since [Plaintiff] has been able to
12 | establish ongoing sobriety, she has been committed to coming to appointments and taking
13 | meds as prescribed. She is much improved. ... At times [Plaintiff] has displayed rapid speech,
14 | decrease[]d impulse control[,] irritability and inappropriate laughter." (*Id.*) Dr. Esposito
15 | opined that Plaintiff has "none-mild" restriction of activities of daily living, marked difficulties
16 | in maintaining social functioning, moderate difficulties in maintaining concentration,
17 | persistence or pace, and no episodes of decompensation within the past year. (*Id.* at 370).

18 | On April 12, 2006, Dr. H.N. Hurwitz, M.D., a Board Certified Psychiatrist and state
19 | agency consultant, completed a reconsideration of Dr. Rivera-Miya's May 31, 2005 assessment
20 | of Plaintiff. (*Id.* at 372). Dr. Hurwitz stated that the "most recent notes show [Plaintiff] is
21 | stable with a normal [mental status examination]." (*Id.*) Dr. Hurwitz affirmed Dr. Rivera-
22 | Miya's opinion of the evidence being consistent with Plaintiff being able to perform non-
23 | public simple and repetitive tasks.

24 | On September 15, 2006, Plaintiff was seen by Dr. Kathleen Erwin, M.D. at UCSD
25 | Outpatient Psychiatric Services. (*Id.* at 377). Plaintiff stated that she was "doing well" and
26 | her mood was "fine." (*Id.*) Dr Erwin reported: "No depressed mood, energy is variable but
27 | mostly low, sleep is usually OK but sometimes she wakes at night and takes 2-3 hours to get
28 | back to sleep." (*Id.*)

On October 24, 2006, Plaintiff was seen by Dr. Erwin. (*Id*. at 376). Plaintiff reported "feeling more depressed, mostly because she has no friends. Her social contacts were all drug-related, and she is now clean and sober." (*Id*.) Dr. Erwin discussed increasing the dosage of Abilify, but decided to keep the dosage at 5 mg daily.

On December 4, 2006, Plaintiff was seen by Dr. Erwin. (*Id*. at 375). Plaintiff reported that she was "depressed" and had "intense cravings for meth and dreams re: using. [Plaintiff] now is >18 months sober." (*Id*.) Dr. Erwin opined that Plaintiff's "psychosis is stable, [but] her depression is worse and she is at high risk of drug relapse." (*Id*.)

On January 9, 2007, Plaintiff was seen by Dr. Erwin. (*Id*. at 374). Plaintiff stated that she had a depressed mood. Dr. Erwin stated that Plaintiff's "level of function is quite low, though she is able to care for her son successfully." (*Id*.) Dr. Erwin recommended increasing the dosage of Ambilify to 10 mg a day, but noted that she "will proceed carefully as [Plaintiff] had akathisia at a dose of 20 mg a day." (*Id*.)

### C.     ALJ's Opinion

After a discussion of the medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff was not entitled to SSDI benefits. (*Id.* at 26). The ALJ found Plaintiff had not engaged in gainful activity since 1993, and the medical evidence established she suffered from the severe impairments of bipolar disorder and substance abuse addiction disorder (i.e. methamphetamine dependence) in sustained remission. (*Id*. at 17). The ALJ found that the record did not support Plaintiff's claims of fatigue, sleep problems and back pain. (*Id.* at 18). The ALJ concluded Plaintiff's impairments, or combinations thereof, failed to meet or equal the criteria of any of the sections listed in the Social Security Regulations. (*Id*. at 19). The ALJ rejected Plaintiff's allegations of disabling limitations and determined that, since October 4, 2004, Plaintiff "has had a residual functional capacity with no exertional limitations and the ability to perform nonpublic simple and repetitive tasks." (*Id*.)

In reaching his decision, the ALJ considered the April 4, 2005 provider statement from Dr. Greenwood "that the claimant does not have any limitations that affect her ability to work or participate in education or training." (*Id*. at 20). The ALJ also relied upon the assessments

completed by the state agency medical consultants Dr. Rivera-Miya and Dr. Hurwitz. (*Id.*)

The ALJ found the opinions of treating physicians Dr. Greenwood and Dr. Esposito regarding Plaintiff's disability were not entitled to controlling weight for the following reasons:

> First, the opinion[] of Dr. Greenw[oo]d ... [is] not well supported. Dr. Greenw[oo]d's opinion is devoid of a diagnosis and supporting objective medical findings.
>
> Second, Dr. Greenw[oo]d's opinion is on the claimant's physical condition but her specialty is psychiatry.
>
> Third, Dr. Greenw[oo]d's opinion is refuted by Dr. Sabourin's July 31, 2003 report that the claimant has no physical restrictions as well as the failure of the claimant's other physicians to describe her to have significant physical limitations.
>
> Fourth, the opinions are contradicted by the repeated descriptions of the claimant's mood as euthymic, okay, or good: Dr. Bromley on January 28, 2005; Dr. Greenw[oo]d on March 22, 2005, April 4, 2005, and May 2, 2005; Dr. Esposito on December 5, 2005 and January 13, 2006; and Dr. Becker on February 21, 2006.
>
> Fifth, the opinions are inconsistent with Dr. Greenw[oo]d's April 4, 2005 report that the claimant does not have any limitations that affect her ability to work or participate in education or training.
>
> Sixth, the opinions are refuted by Dr. Greenw[oo]d's April 4, 2005 report that the claimant has no problems with social functioning and that the claimant's task completion ability is not affected by her mental condition.
>
> Seventh, the opinions are contrary to the conclusions of Dr. Rivera-Miya and Dr. Hurwitz that the claimant is able to sustain nonpublic simple and repetitive tasks.
>
> Eighth, the opinions are inconsistent with the weight of the record as a whole and are therefore entitled to reduced weight.
>
> Ninth, the determination that the claimant is not disabled is an issue reserved to the Commissioner and even treating source opinions on such issues are never entitled to controlling weight or special significance.

(*Id.* at 21-22 (citations and emphasis omitted)). The ALJ stated that he gave greater weight to the opinions of Dr. Becker, Dr. Bromley, Dr. Hurwitz, Dr. Rivera-Miya, Dr Sabourin, as well as the December 5, 2005 and January 13, 2006 reports of Dr. Esposito, and the March 22, 2005, April 4, 2005, and May 2, 2005 reports of Dr. Greenwood. (*Id.* at 22).

The ALJ stated the following "clear and convincing reasons [that] the allegations of the

claimant's disabling limitations are not credible":[3]

> [T]he analysis of the opinions of Dr. Greenw[oo]d ... and Dr. Esposito is incorporated by reference herein.
>
> [T]he claimant's course of treatment has reflected a conservative approach.
>
> [T]he record does not indicate that the claimant's medications are ineffective or that they cause her debilitating side effects. ...
>
> [T]he claimant complains of slow learning and poor concentration, but the evidence shows otherwise. Dr. Bromley described the claimant to have logical, clear and coherent thought on January 28, 2005. Dr. Esposito reported the claimant to have a linear thought process on January 13, 2006. Olga Becker, M.D. ... reported the claimant to have linear thought processes on February 21, 2006 [and] March 21, 2006.
>
> [T]he evidence rebuts the claims of the claimant's disabling depression. Dr. Bromley found the claimant to have an euthymic mood on January 28, 2005. Dr. Greenw[oo]d reported the claimant to have an okay mood on March 22, 2005; an euthymic mood on April 4, 2005; and an okay mood on May 2, 2005. Dr. Esposito described the claimant to have a good mood on December 5, 2005 [and] January 13, 2006. Dr. Becker reported the claimant to have a good mood on February 21, 2006. ...
>
> Dr. Sabourin reported the claimant to have no physical restrictions on July 31, 2003. The claimant denied to Dr. Carroll on October 9, 2004 that she has any chronic medical problems. ...
>
> [T]he claimant was able to participate in the administrative hearing and respond to the questioning without any apparent difficulties.

(*Id*. at 22-24 (citations omitted)).

The ALJ found that Plaintiff has no past relevant work; she has an eleventh grade education; and she is literate in and able to communicate in English. (*Id*. at 25). Given his findings, the ALJ determined that Medical-Vocational Rule 204.00 directs a finding of "not disabled" for Plaintiff since her alleged disability onset date. (*Id*. at 25-26). The ALJ noted that Public Law 104-21 prohibits a finding of disability when a substance addiction disorder is a contributing factor material to the claimant's disability. The ALJ stated that because he found Plaintiff not to be disabled, "the issue of whether the claimant's substance addiction disorder is material to her disability does not arise in this decision." (*Id*. at 26).

**II.    Standard of Review**

When an applicant's claim for disability benefits under the Social Security Act has been

---

[3] Only those reasons related to Plaintiff's claim on appeal are quoted herein.

denied, she may seek judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g). Where, as in this case, "the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981). A reviewing court will reverse the ALJ's decision only if "it is based upon legal error or is not supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is "more than a mere scintilla but less than a preponderance." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted). "If the record would support more than one rational interpretation, we defer to the ALJ's decision." *Bayliss*, 427 F.3d at 1214 n.1 (citation omitted).

### III.  Contentions of the Parties

The single contention raised by Plaintiff is: "The ALJ's rejection of the opinion of Dr. Esposito is based on legal error and not supported by substantial evidence." (Doc. # 13-1 at 6). Plaintiff contends that "[b]y rule, the Social Security Administration favors the opinion of a treating physician [such as Dr. Esposito] over non-treating physicians [such as Dr. Rivera-Miya and Dr. Hurwitz]." (*Id.* at 8). Plaintiff contends:

> Of the nine reasons the ALJ gave to reject the opinions of Dr. Greenwood and Dr. Esposito, none of them specifically mention Dr. Esposito by name. The first three are specific to Dr. Greenwood, as such they cannot be specific and legitimate reasons for rejecting the opinion of Dr. Esposito. The remaining reasons are not specific and legitimate reasons based on substantial evidence in the record.

(Doc. # 21 at 1-2).

Defendant contends that "[i]t was reasonable for the ALJ to discount Dr. Espo[s]ito's unsupported opinion based in part on ... inconsistencies [between Dr. Esposito's opinion and other evidence in the record], especially considering that the ALJ provided numerous additional reasons also supported by substantial evidence." (Doc. # 16-1 at 5). Defendant also points to reports by treating physicians Dr. Becker, Dr. Bromely and Dr. Esposito indicating that Plaintiff was stable with consistent medication.

//

**IV.  Analysis**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.... Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted). "[T]he report of a non-treating, non-examining physician, combined with the ALJ's own observance of the claimant's demeanor at the hearing" is not alone sufficient to constitute substantial evidence "and, therefore, does not support the Commissioner's decision to reject an examining physician's opinion that the claimant was disabled." *Id.* at 831 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). However, the Ninth Circuit has "upheld the Commissioner's decision to reject the opinion of a treating ... physician, based in part on the testimony of a nonexamining medical advisor." *Id.* (citing *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989)).

In rejecting the opinions of treating physicians Dr. Esposito and Dr. Greenwood that Plaintiff is unable to work, the ALJ relied in part on the opinions of nonexamining medical advisors Dr. Rivera-Miya and Dr. Hurwitz.[4]  The ALJ also relied upon other evidence in the record, including contradictory statements made by Dr. Greenwood and Dr. Esposito. (Doc. # 8 at 21-22.)  The ALJ relied upon Dr. Greenwood's April 4, 2005 opinion that Plaintiff did not have any limitations that affected her ability to work, and Plaintiff had no problems with social functioning or task completion ability. (*Id*. at 20).  Dr. Esposito's stated basis for supporting Plaintiff's disability application was Plaintiff's "ongoing daily difficulties with irritability [and] distractability." (*Id*. at 270; *see also id*. at 21).  The ALJ reasonably found this opinion to be "contradicted by the repeated descriptions of the claimant's mood as euthymic, okay, or good" in the treatment notes of  Dr. Bromley, Dr. Greenwood, Dr. Esposito and Dr.

---

[4]  Plaintiff has not raised the issue of whether the ALJ properly rejected Dr. Greenwood's opinion.  Therefore, this issue is not addressed. *See Rudebusch v. Hughes*, 313 F.3d 506, 521 (9th Cir. 2002).

Becker. (*Id*. at 21). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [A court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40 (citation omitted).

After reviewing the Administrative Record and the submissions of the parties, the Court concludes that the ALJ articulated specific and legitimate reasons, based upon substantial evidence, for not giving controlling weight to the opinion of Dr. Esposito regarding Plaintiff's disability. The Court concludes that the ALJ's decision is supported by substantial evidence and is free from legal error.

## V. Conclusion

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. # 13) is **DENIED** and Defendant's Cross-Motion for Summary Judgment (Doc. # 16) is **GRANTED**.

The Clerk of the Court shall enter judgment for Defendant and against Plaintiff.

DATED: March 16, 2010

**WILLIAM Q. HAYES**
United States District Judge